UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HEIDI DIAZ, on behalf of herself and all others similarly situated, | Index No.: |
| Plaintiff, | **COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| BLOOMBERG, L.P., | |
| Defendant. | |

  Plaintiff Heidi Diaz ("Plaintiff"), on behalf of herself and all other similarly situated persons, by and through her undersigned counsel, alleges upon personal knowledge as to herself and upon information and belief as to other matters (which is based on, among other things, her experiences at Defendant's facility, review of Defendant's records, conversations with Defendant's employees and investigation of her counsel), as follows:

## NATURE OF ACTION

  1. Plaintiff brings this action on behalf of herself and all other similarly situated current and former non-exempt salaried employees ("Employees") of Bloomberg, L.P. ("Bloomberg" and/or "Defendant"), who, by virtue of its management and control over the wages and work of its Employees, is classified as an "employer" under applicable labor law.

  2. Bloomberg is a privately held financial, software, data, and multi-national media company headquartered in New York, New York.  Among other things, Defendant provides financial software tools, such as analytics and equity trading platforms, data services and news, to financial companies and organizations around the world, including through the Bloomberg Terminal.

3.      As particularized below, Defendant has engaged in illegal and improper wage practices that have deprived Employees of millions of dollars in wages and overtime compensation.  These practices include: (a) compensating Employees based only upon their scheduled hours rather than the actual time they worked; (b) failing to compensate Employees overtime at the rate of one- and one-half their regular rate for hours worked in excess of 40 hours in a week; and (c) automatically deducting time for meal breaks when Employees are performing work during that time.  Additionally, Defendant failed to provide Employees with appropriate pay rate acknowledgement forms and weekly wage statements.

4.      These illegal practices and policies are uniform throughout Defendant's facilities and have been known to Defendant for years.

5.      In fact, Defendant was recently sued for similar violations in an action captioned *Martinez, et al. v. Bloomberg, L.P.*, Case No. 17-cv-04555 (S.D.N.Y.) (the "Martinez Action"). Bloomberg entered into a multi-million-dollar settlement to resolve the Martinez Action, which was approved by the District Court for the Southern District of New York, who entered final judgment dismissing the action on February 3, 2020.  However, undeterred, Bloomberg continued its illegal and improper wage practices, thereby necessitating this action seeking redress for Bloomberg's continued unlawful conduct from the date of final judgment in the Martinez Action through the present.

6.      For these reasons, Plaintiff brings this action on behalf of herself and other Employees to recover unpaid wages, overtime compensation, damages, penalties and reasonable attorneys' fees and costs under the Fair Labor Standards Act (the "FLSA") §§ 201, *et seq.*, and under McKinney's Labor Law (the "NYLL"), §§ 190, *et seq.*, 195(1), 195(3), §§ 650, *et seq.*, and 12 NYCRR § 142-2.2.

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves a federal statute, the FLSA, 29 U.S.C. § 216(b).

8.     This Court has original jurisdiction over all claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  This is a proposed class action in which: (a) there are 100 or more members in the proposed class; (b) at least some members of the proposed class have a different citizenship from the Defendants; and (c) the claims of the proposed class members exceed $5,000,000.00 in the aggregate.

9.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the NYLL state law wage and hour claims because those claims derive from a common nucleus of operative fact.

10.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events giving rise to the claims asserted herein occurred in this judicial district.

## THE PARTIES

**Plaintiff**

11.     Plaintiff is a resident of New York, New York and is a former Employee of Defendant.  Specifically, Plaintiff was employed by Defendant from January 13, 2014 to July 6, 2022.

12.     Initially, Plaintiff was hired by Defendant as a Customer Service Representative in Defendant's Global Customer Support Department. On or about September 2016, Plaintiff was transferred to Defendant's Installations Department as Installations Coordinator.

13.    On or about July or August 2017, Plaintiff again transferred positions, this time to Defendant's Human Resources Department as a Human Resources Specialist ("HR Specialist"). Plaintiff remained in this role until the termination of her employment with Defendant on July 6, 2022.

14.    As an HR Specialist, Plaintiff was tasked with maintaining telephonic communications with newly-hired employees, providing new-hire verification letters, assisting employees with benefits enrollment, assisting newly-hired and existing employees with their relocations within the United States, Canada and Latin America, completing and processing new-hire employee paperwork, processing involuntary and voluntary exits/terminations, conducting exit interviews with departing employees, conducting new employee onboarding, processing employee promotions, managing Bloomberg's Cost of Living Allowance Program  (COLA) for employees operating in the United States, Canada and Latin America, managing and fulfilling incoming work tickets that assigned human resources tasks to be performed and training new employees.

15.    Throughout her employment with Defendant, Plaintiff was paid as a salaried employee with a set schedule.  During the initial months of her employment, Plaintiff was scheduled to work from 10 a.m. to 7 p.m., Monday to Friday.  From on or around October 2017 to the end of her employment with Defendant, Plaintiff was scheduled to work from 8 am. to 5 p.m., Monday to Friday.

16.    Despite having a set schedule, Plaintiff routinely worked hours for which she was not paid, including before the start of her scheduled shifts, during meal breaks, after the end of her shifts, on weekends or on days off, and remotely from home.

17.     Plaintiff could not exercise independent discretion, judgment or control over the daily and overall operation of the areas in which she worked.  Plaintiff could not hire or fire other Employees. Plaintiff also could not pick and choose a particular job assignment during any given day, but rather was assigned particular job assignments by her supervisors.  Despite this lack of independent discretion, throughout the entirety of her employment, Plaintiff was not properly compensated for all hours worked.

18.     Specifically, throughout her employment, Plaintiff was asked to and did perform essential work in before the beginning of her scheduled shift and after her scheduled shift.  For example, multiple times throughout her employment, Plaintiff would arrive and begin performing work between 15 to 30 minutes before the start of her scheduled shift, but she was not paid for this additional time.  Similarly, nearly every day throughout her employment Plaintiff worked beyond the end of her scheduled shift, routinely leaving Bloomberg well after 5pm each day.  However, Plaintiff was not compensated for this additional time.  Instead, Plaintiff was paid a fixed rate based on her 8-hour-per-day schedule, regardless of the time she spent working before and after her scheduled shift.

19.     Bloomberg was well aware that Plaintiff and other Employees were working beyond their scheduled shifts.  On numerous occasions, Plaintiff's manager would observe Plaintiff working after the end of her scheduled shift, but did nothing to ensure Plaintiff was compensated for this time.

20.     Throughout her employment with Defendant, Plaintiff would scan a security badge when she entered and left her worksite.  As such, Defendant could readily calculate the hours Plaintiff worked, including the hours worked before and after her scheduled shift.  Nonetheless, Defendant paid Plaintiff solely based on her scheduled shift and not the actual hours she worked.

21.    On average, Plaintiff worked 2-5 hours per week beyond her scheduled 8-hour shift. Plaintiff, however, was not paid for this additional time.

22.    While Defendant had the ability to track Plaintiff's hours, Defendant required Plaintiff and other Employees to submit a request for overtime for hours worked beyond 40 hours in a week.  The request would then need to be approved by Plaintiff's manager.  The overtime submission process was intentionally and unduly cumbersome and burdensome.

23.    On those few occasions when Plaintiff did receive overtime for hours worked beyond her scheduled shift, Plaintiff was only paid one-half of her regular rate.  For example, during the pay period of May 1, 2022 to May 15, 2022, Plaintiff was paid for 8 hours of overtime at the rate of $18.23, which was one-half of her regular rate.

24.    Plaintiff was engaged in essential and integral work on Defendant's behalf during these and all other pre- and post-shift schedule-based time periods in which she was working but not compensated.  Work performed during the pre- and post-shift schedule-based periods include some or all the job duties referenced *supra*.  This pre- and post-shift work was significant, integral and indispensable to the performance of job-related duties, was not a *de minimis* task or request and was for Defendant's benefit.

25.    Furthermore, Plaintiff would routinely be interrupted during her uncompensated meals breaks and be required to perform work before the expiration of her full-60-minute meal break.  Work performed during interrupted and uncompensated meal breaks includes those duties described *supra*. Further, at least 2 to 3 times per week, Plaintiff did not take a lunch break at all and performed work duties during the entirety of her uncompensated meal break.  Plaintiff, however, was never compensated for the time she spent working during her uncompensated meal break.

26.     By way of example, during the pay period of April 16, 2022 to April 30, 2022, Plaintiff worked approximately 30 minutes to 1 hour after her scheduled shift on at least 4 occasions, and worked through the entirety of her uncompensated meal break during approximately 6 times.  During this specific period, Plaintiff was paid her flat regularly scheduled rate just for her scheduled hours.  However, during this period, Plaintiff actually worked an additional 5 to 7 hours and was not paid any additional straight or overtime (at the appropriate rate of time-and-a-half) for these additional hours of work. In addition, during this pay period, Plaintiff worked an additional 8-hour shift on Saturday April 30, 2022, for which she was paid overtime at the rate of one-half her regular rate.

27.     Notably, in March 2019, Plaintiff's supervisor, Jennifer Behm, informed Plaintiff that she was being converted from an exempt employee to a non-exempt employee and presented with a Notice of Acknowledgment of Pay Rate and Pay Day, which informed Plaintiff that although she was classified by Defendant as eligible to receive overtime pay for all hours worked over 40 hours per week, her overtime rate of pay would not be the appropriate time-and-a-half rate of pay. Instead, Defendant informed Plaintiff that her overtime rate of pay would be fifty percent (50%) of her weekly salary—misrepresenting that this practice was appropriate under applicable labor laws because Plaintiff worked under a purported fluctuating workweek schedule. In fact, during the entirety of Plaintiff's employment with Defendant, Plaintiff always worked according to a set schedule, which never fluctuated (other than the fact that Plaintiff routinely worked before and after the start of her scheduled shifts and during uncompensated meal breaks).

28.     Additionally, Plaintiff's supervisors knew she was performing work before and after her scheduled shift, during uncompensated meal breaks, and over the weekend, but did nothing to rectify the situation or compensate Plaintiff for her time.  Specifically, Plaintiff's

supervisors with knowledge of Plaintiff's uncompensated work included Eddy Carta and Jennifer Behm.

29.     Thus, because of Defendant's improper schedule-based pay, meal break, and overtime compensation policies, Plaintiff was deprived of wages as required by the FLSA and NYLL, including at least 1 to 5 hours of uncompensated straight and/or overtime per week.

30.     Finally, Defendants never provided Plaintiff with proper pay rate acknowledgement forms at the commencement of her employment and when she received a change in her rate of pay as required under NYLL §195(1), nor was she provided with appropriate weekly wage statements as required by NYLL §195(3).

31.     Just like Plaintiff, all other Employees were routinely required to perform work both before clocking in and after clocking out, but were only compensated based on their scheduled hours.  In those limited instances when such Employees did receive overtime pay, it was not at the prevailing overtime rate.  For example, a former co-worker of Plaintiff's, Nicole Mutrynowski, expressly informed Plaintiff that when she was hired by Defendant towards the end of 2021, her overtime rate was ½ of her hourly rate, just like Plaintiff.

32.     Likewise, just like Plaintiff, all Employees of Defendant routinely worked during some or all of their uncompensated meal breaks, but were not paid for this time.

**<u>Defendant</u>**

33.     Bloomberg is a privately held financial, software, data, and media company headquartered in New York, New York, which employs well over 1,000 Employees.

34.     Bloomberg provides financial software tools and enterprise applications such as analytics and equity trading platform, data services, and news to financial companies and organizations through the Bloomberg Terminal.

35.     Bloomberg's operation also includes a wire service (Bloomberg News), a global television network (Bloomberg Television), websites, radio stations (Bloomberg Radio), subscription-only newsletters, and two magazines: *Bloomberg Businessweek* and *Bloomberg Markets.*

36.     According to its website, Bloomberg operates in 176 locations, has approximately 20,000 employees, and generates approximately $10 billion in revenue per year.

37.     The compensation policies of Defendant are centrally and collectively dictated, controlled, and ratified.  As such, Defendant had the power to control wage policies and practices through the oversight of day-to-day operating procedures, control over Employee work schedules, ability to determine Employees' rate of pay, and ability to control record-keeping practices.  Thus, Defendant is the employer of Plaintiff and class members within the meaning of the FLSA and NYLL.

## **FACTUAL ALLEGATIONS**

**Background**

38.     Defendant employs thousands of Employees and pays them based on their scheduled hours, rather than the hours actually spent working.

39.     More specifically, Defendant hired Plaintiff and the other Employees and promised to pay wages based on a standard work week of 40 hours.

40.     However, in or around March 2019, Defendant reclassified Plaintiff and other Employees as non-exempt and eligible to receive overtime pay, but only at a pay rate of 50% of their weekly salary.  In connection with this alleged re-classification, Defendant also informed Plaintiff and other Employees they would not be eligible for bonuses.

41.     Specifically, pursuant to a Notice and Acknowledgement of Pay Rate and Pay Day dated March 1, 2019, Plaintiff was informed that "Bloomberg will pay an additional 50% overtime premium for hours worked in excess of 40 hours in a week." The Notice and Acknowledgement of Pay Rate and Pay Day further explains that overtime is calculated as follows: "Weekly salary . . . divided by the number of hours worked in each particular workweek . . . *0.5."

42.     Plaintiff and Employees work pursuant to a set schedule that does not vary or fluctuate. Nonetheless, Defendant purportedly sought to rely on a so-called fluctuating workweek in support of its unlawful overtime pay practices.

43.     Employees are required to swipe security badges to enter and exist Defendant's facility. As such, Defendant is readily capable of determining the exact hours and minutes Employees spend working on Defendant's behalf. However, rather than paying Employees for such time, Defendant pays Employees for their scheduled hours, unless the Employee undertakes a burdensome overtime submission process which, if approved, results in overtime pay at 50% of the Employee's regular hourly rate.

44.     Defendant is well aware of when Plaintiff and other Employees work in excess of 40 hours in a week. Nonetheless, Defendant does not pay Plaintiff and other Employees for all hours worked in excess of 40 hours in a week as a result of Defendant's improper scheduled-based pay policies. And when Defendant does pay Plaintiff and other Employees overtime, Defendant fails to pay the proper overtime rate.

45.     For example, during the pay period of May 1, 2022 to May 15, 2022, Plaintiff was paid for 8 hours of overtime, but at the rate of 50% of her regular hourly rate.

46.     Defendant's schedule-based practice unfairly favors Defendant versus the Employees subject to the schedule-based policy.  This policy consistently and artificially reduces the total time Employees are credited with working at Defendant's facilities.

47.     Moreover, Employees routinely work during some or all of their uncompensated meal breaks, but are not compensated for this time.

48.     Accordingly, Plaintiff seeks certification of the following class of Employees:

> All Salaried Employees and Hourly Employees who are or were employed by Defendant from February 4, 2020[1] through the date of the filing of this action and were improperly penalized by Defendant's schedule-based pay practices, including when they performed work related duties before and/or after the end of their scheduled shift and who were: (a) not compensated for all work performed; and/or (b) were not compensated for all work performed during uncompensated and automatically deducted meal breaks; and/or (c) were not fully compensated for time worked over forty hours per week at appropriate overtime rates.

**Defendant Failed To Provide Employees With Timely
And Appropriate Wage Statements and Pay Rate
<u>Acknowledgement Forms As Required Under NYLL</u>**

49.     Defendant failed to provide Plaintiff and all other Employees with wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; names of the employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

---

[1]     As discussed above, Defendant was previously sued for similar violations in an action captioned *Martinez, et al. v. Bloomberg, L.P.*, Case No. 17-cv-04555 (S.D.N.Y.), which Bloomberg settled for millions of dollars and which final judgment was entered on February 3, 2020.  Thereafter, however, Bloomberg continued its unlawful pay practices, thereby giving rise to this action.

50.    Defendant failed to provide Plaintiff and all other Employees at the time of hiring and when they received a change in their rate of pay, a statement in English and the Employees' primary language, containing: the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employers' main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

**FAIR LABOR STANDARDS ACT COLLECTIVE ACTION ALLEGATIONS**

51.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

52.    Plaintiff brings this FLSA collective action on behalf of herself and all other persons similarly situated pursuant to 29 U.S.C. §§ 207 and 216(b) who were employed by Defendant from February 4, 2020 through the date of the filing of this action and were subject to one or more of Defendant's improper pay practices further described in paragraph 33 (the "FLSA Collective Class").

53.    Excluded from the FLSA Collective Class is Defendant, its legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in Bloomberg, L.P.  Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the FLSA Collective Class.

54.    Plaintiff is unable to state the exact number of Employees within the Collective Class without discovery of Defendant's books and records but estimates that the FLSA Collective Class exceeds 500 individuals.

55.     Defendant improperly benefited from Plaintiff and the FLSA Collective Class members' uncompensated work during schedule-based periods and uncompensated meal breaks.

56.     Defendant's unlawful conduct has been widespread, repeated and consistent. Moreover, Defendant's conduct was willful and in bad faith and has caused significant damages to Plaintiff and the FLSA Collective Class.

57.     Defendant is liable under the FLSA for failing to properly compensate Plaintiff and the FLSA Collective Class, and, as such, notice should be sent to the FLSA Collective Class.  There are numerous similarly situated, current and former Employees who have been denied wages in violation of the FLSA who would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join in the action.  Those similarly situated Employees are known to Defendant and are readily identifiable through Defendant's records.

## NEW YORK CLASS ACTION ALLEGATIONS

58.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

59.     Plaintiff brings this action on her own behalf and as a class action pursuant to Article 9 of New York Civil Practice Law and Rules on behalf of all Employees employed by Defendant from February 4, 2020 through the date of the filing of this action and were subject to one or more of Defendant's improper pay practices further described in paragraph 33 (the "New York Class").

60.     Excluded from the New York Class is Defendant, its legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in Bloomberg, L.P.  Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the New York Class.

61.    Defendant operates a global financial, software, data, and media company, employing thousands of Employees, and has systematically failed and refused to pay its Employees for all compensable hours worked.  The members of the New York Class are so numerous that joinder of all members in one proceeding is impracticable.

62.    Plaintiff's claims are typical of the claims of other New York Class members because Plaintiff is an Employee who has not been compensated for work performed at her employer's request before her scheduled shift and after her scheduled shift or for work performed during her uncompensated meal breaks.

63.    Plaintiff and other New York Class members have sustained similar types of damages as a result of Defendant's failure to comply with the NYLL.  Plaintiff and other New York Class members have been injured in that they have been uncompensated or under-compensated due to Defendant's common policies, practices, and patterns of conduct.

64.    Plaintiff will fairly and adequately protect the interests of the New York Class. Plaintiff has retained counsel competent and experienced in complex class action and wage and hour litigation.  There is no conflict between Plaintiff and the New York Class.

65.    Common questions of law and fact exist as to the New York Class that predominate over any questions solely affecting them individually and include, but are not limited to, the following:

a)    Whether Defendant failed and/or refused to pay Plaintiff and the New York Class for all of the compensable time that they worked for Defendant;

b)    Whether Defendant failed and/or refused to pay Plaintiff and the New York Class appropriate overtime rates;

c)      Whether Defendant failed and/or refused to pay Plaintiff and the New York Class for time spent working during uncompensated and automatically deducted meal breaks;

d)      Whether Defendant failed to keep true and accurate time records for all hours worked by Employees as required by New York Labor Law §§ 190 *et seq.* and 650 *et seq.*;

e)      Whether Defendant failed to provide appropriate and accurate pay rate acknowledgement forms and weekly wage statements as required by New York Labor Law §§ 195(1) and 195(3);

f)      Whether Defendant correctly compensated Plaintiff and members of the New York Class for hours worked in excess of forty per workweek;

g)      Whether Defendant correctly compensated Plaintiff and members of the New York Class for all uncompensated straight time hours worked under forty per workweek;

h)      Whether Defendant failed to comply with the posting and notice requirements of the NYLL;

i)      Whether Defendant engaged in a pattern and/or practice in New York of forcing, coercing, and/or permitting Plaintiff and New York Class members to perform work for Defendant's benefit which was not compensated;

j)      Whether Defendant's policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

k)      The nature and extent of class-wide injury and the measure of damages for those injuries.

66.     Class action treatment is superior to any alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously,

efficiently and without the duplication of effort and expense that numerous individual actions would entail. Individual class members' damages are inadequate to justify the costs of prosecuting their claims in any manner other than a class action. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. Members of the New York Class are readily identifiable from Defendant's own records.

67.     Prosecution of separate actions by individual members of the New York Class would create the risk of inconsistent or varying adjudications with respect to individual members of the New York Class that would establish incompatible standards of conduct for Defendant.

68.     Without a class action, Defendant will retain the benefit of its wrongdoing and will continue a course of action that will result in further damages to Plaintiff and the New York Class.

69.     Plaintiff intends to send notice to all members of the New York Class to the extent required by New York C.P.L.R. § 904.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (On Behalf of Plaintiff and the FLSA Collective Class)

70.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

71.     At all relevant times, Defendant has been, and continues to be an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

72.     At all relevant times, Defendant has employed and continues to employ, Employees, including Plaintiff and each of the members of the FLSA Collective Class.

73.     Plaintiff consents in writing to be a part of this action pursuant to FLSA, 29 U.S.C. § 216(b), and attached hereto as Exhibit A is a copy of Plaintiff's Opt-in form. As this case

proceeds, it is likely that other individuals will sign consent forms and join as Plaintiff and opt-ins.

74.     The FLSA requires each covered employer such as Defendant to compensate all non-exempt Employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per workweek.  The FLSA also requires each covered employer to pay the minimum wage for all hours worked.

75.     Plaintiff and the members of the FLSA Collective Action were and are entitled to be paid minimum wage and overtime compensation for all hours worked.

76.     Defendant, pursuant to its policies and practices, failed and refused to pay minimum wage and overtime premiums to Plaintiff and the members of the FLSA Collective Class for all of their hours worked.

77.     By failing to compensate Plaintiff and the members of the FLSA Collective Class for minimum wage and overtime compensation, Defendant has violated, and continues to violate, the FLSA, 29 U.S.C. § 201, *et seq*.

78.     By improperly rounding FLSA Collective time entries, Defendant has violated, and continues to violate Department of Labor Regulation 29 C.F.R. § 785.48(b).

79.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

80.     Plaintiff, on behalf of herself and members of the FLSA Collective Class, seeks damages in the amount of their unpaid wages and overtime compensation, interest, and such other legal and equitable relief as the Court deems just and proper.

81.     Plaintiff, on behalf of herself and the FLSA Collective Class, seeks recovery of attorneys' fees and costs, to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

**Violations of New York Labor Law – Nonpayment of Straight Wages
§§ 190 *et seq.* and 650 *et seq.* and 12 NYCRR 142-2.1 and 142-2.2
(On Behalf of Plaintiff and the New York Class)**

82.     The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

83.     Pursuant to New York Labor Law §§ 190, 191, 193, 198 and 652, Defendant has willfully failed to pay the straight wages due as set forth in the preceding paragraphs of this Complaint to Plaintiff and the New York Class in violation of New York Labor Law §§ 190, 191, 193, 198 and 652 and 12 N.Y.C.R.R. 142-2.1 and 142-2.2.

84.     Defendant was not and is not permitted by state or federal law, or by order of a court of competent jurisdiction, to withhold or divert any portion of the Plaintiff's and the New York Class wages that concern this lawsuit.

85.     Defendant was not authorized by Plaintiff or any New York Class members to withhold, divert or deduct any portion of their unpaid wages which are the subject of this lawsuit.

86.     Pursuant to New York Labor Law § 198, employers such as Defendant who intentionally fail to pay wages in conformance with New York Labor Law shall be liable for the wages or expenses that were intentionally not paid, and court costs and attorneys' fees incurred in recovering the unpaid wages.

87.     Defendant has violated the New York Labor Law by failing to pay Plaintiff and the members of the New York Class for all compensable time and by failing to pay Plaintiff and the members of the New York Class for the straight time worked at the established rate.

88.     Plaintiff, on behalf of herself and the New York Class, seeks the amount of underpayments based on Defendant's failure to pay straight wages of at least the minimum wage

for all hours worked, as provided by the New York Labor Law, and such other legal and equitable relief as the Court deems just and proper.

89.    Plaintiff, on behalf of herself and the New York Class, seeks all liquidated and punitive damages and penalties available under the NYLL.

## THIRD CAUSE OF ACTION

**New York Labor Law – Unpaid Overtime**
**(On Behalf of Plaintiff and the New York Class)**

90.    The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

91.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations 12 N.Y.C.R.R. 142-2.1 and 142-2.2 apply to Defendant and protect Plaintiff and the members of the New York Class.

92.    Defendant has failed to pay Plaintiff and members of the New York Class overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

93.    By Defendant's knowing and/or intentional failure to pay Plaintiff and the members of the New York Class overtime wages for hours worked in excess of forty hours per week, they have willfully violated NYLL Article 19, §§ 650 *et. seq.*, and the supporting New York State Department of Labor Regulations.

94.    Due to Defendant's violations of the NYLL, Plaintiff and the members of the New York Class are entitled to recover from the Defendant their unpaid overtime wages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

95.    Plaintiff, on behalf of herself and the New York Class seeks all liquidated and punitive damages and penalties available under the NYLL.

## FOURTH CAUSE OF ACTION

**New York Labor Law – Violation of the Notice and Recordkeeping Requirements
(On Behalf of Plaintiff and the New York Class)**

96.     The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

97.     Defendant has failed to provide Plaintiff and all Employees with a written notice, in English and in Spanish, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

98.     Defendant is liable to Plaintiff and each Employee for its violations of NYLL § 195(1), together with costs and attorneys' fees.

## FIFTH CAUSE OF ACTION

**New York Labor Law – Violation of the Wage Statement Provisions
(On Behalf of Plaintiff and the New York Class)**

99.     The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

100.     Defendant has not provided Plaintiff and all Employees a statement with each payment of wages listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum

wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as required by NYLL § 195(3).

101.    Defendant is liable to Plaintiff and each Employee for its violations of NYLL § 195(3), together with costs and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Heidi Diaz, individually and on behalf of the FLSA Collective, seeks the following relief:

A.    Designation of this action as a collective action on behalf of the FLSA Collective (asserting FLSA claims) and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Plaintiff Consent Forms pursuant to 29 U.S.C. § 216(b);

B.    Designation of Plaintiff Heidi Diaz as the Representative of the FLSA Collective Class;

C.    Appointment of Plaintiff's counsel as Lead Counsel for the FLSA Collective Class;

D.    An award of damages, according to proof, including but not limited to unpaid overtime wages and lost benefits, to be paid by the Defendant;

E.    An award of costs incurred herein, including expert fees;

F.    An award of attorneys' fees pursuant to 29 U.S.C. § 216;

G.    An award of pre-judgment and post judgment interest, as provided by law;

H.    An award of injunctive relief to prevent against future wage and hour violations; and

I.      All such other relief as this Court shall deem just and proper.

**WHEREFORE**, Plaintiff Heidi Diaz, individually and on behalf of the New York Class, seeks the following relief:

A.      Certification of this action as a class action under Rule 23 and the appointment of Plaintiff's counsel as Lead Counsel for the New York Class;

B.      Designation of Plaintiff Heidi Diaz as the Representative of the New York Class;

C.      On the Second Cause of Action (Violation of New York Labor Law – Nonpayment of Straight Wages):

1.      An award to Plaintiff and members of the New York Class of damages for the amount of unpaid straight wages in addition to interest subject to proof;

2.      An award to Plaintiff and the members of the New York Class of reasonable attorneys' fees and costs pursuant to New York Labor Law;

D.      On the Third Cause of Action (Violation of New York Labor Law – Unpaid Overtime):

1.      An award to Plaintiff and the members of the New York Class of damages for the amount of unpaid overtime, in addition to interest subject to proof; and

2.      An award to Plaintiff and the members of the New York Class of reasonable attorneys' fees and costs pursuant to New York Labor Law.

E.      On the Fourth and Fifth Causes of Action (Violation of New York Labor Law – Notice and Recordkeeping Requirements and Wage Statement Provisions):

1.      An award to Plaintiff and members of the New York Classes of damages for violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d).

2.  An award to Plaintiff and the members of the New York Classes of reasonable attorneys' fees and costs pursuant to NYLL §§198(1-b), 198(1-d).

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable.

## DEMAND TO PRESERVE EVIDENCE

Defendant is hereby directed to preserve all physical and electronic information pertaining in in any way to Plaintiff and Plaintiff's employment, to Plaintiff's causes of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

## NOTICE PURSUANT TO NEW YORK BUSINESS CORPORATIONS LAW § 630

Defendant is hereby put on notice that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, they are hereby notified that Plaintiff, the FLSA Collective Class and the New York Class intends to charge and hold personally, jointly and severally liable, the ten largest shareholders of Bloomberg, L.P. for all debts, wages, and/or salaries due and owing to Defendant's employees for services performed by them and Plaintiff has expressly authorized the undersigned, as her attorney, to make this demand on her behalf.

Dated: New York, New York
      August 25, 2022

McLAUGHLIN & STERN, LLP

By: */s/ Jason S. Giaimo*
      Jason S. Giaimo
      Lee S. Shalov
      Brett R. Gallaway
260 Madison Ave.
New York, NY 10016
Telephone: (212) 448-1100
lshalov@mclaughlinstern.com
bgallaway@mclaughlinstern.com
jgiaimo@mclaughlinstern.com

*Attorneys for Plaintiff, the FLSA*
*Collective Class and the New York Class*