UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
HEIDI DIAZ, *on behalf of herself and all others similarly situated*,

                              Plaintiff,

                              -v-

BLOOMBERG, L.P.,

                              Defendant.
------------------------------------------------------------------X

22-CV-7251 (JMF)

MEMORANDUM OPINION
AND ORDER

JESSE M. FURMAN, United States District Judge:

Plaintiff Heidi Diaz brings this action on behalf of herself and others similarly situated against her former employer Bloomberg, L.P. ("Bloomberg"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Labor Law §§ 650 *et seq.* *See* ECF No. 26 ("FAC"), ¶ 8. Bloomberg now moves, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for partial judgment on the pleadings — specifically, to dismiss Diaz's first and second causes of action to the extent that they allege that Bloomberg improperly used the "fluctuating workweek" or "FWW" method of paying overtime and, thus, paid overtime at an incorrect rate. *See* ECF No. 29 ("Def.'s Mem."), at 1. For the reasons that follow, the Court concludes that Diaz's own allegations demonstrate that Bloomberg properly used the FWW method. Accordingly, Bloomberg's motion is GRANTED.

## BACKGROUND

The following facts, which are taken from the First Amended Complaint and documents incorporated by reference therein, are presumed to be true for purposes of this motion. *See, e.g.*,

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).  Diaz was employed at Bloomberg in various capacities from January 13, 2014 to July 6, 2022.  FAC ¶ 13.  In or about March 2019, Bloomberg reclassified Diaz's role as non-exempt and, thus, eligible to receive overtime pay.  *Id.* ¶ 45.  In connection with the reclassification, Bloomberg provided Diaz with a Notice and Acknowledgement of Pay Rate and Pay Day ("Notice") dated March 1, 2019.  *Id.* ¶ 46; *see* ECF No. 22-1 ("Notice").  The Notice reflected that Diaz's salary as of March 2019 was $86,000 (or $1,653.85 per week) and included the following acknowledgement:

> My weekly compensation for this role will consist of two components: (1) a fixed base weekly salary; and (2) an additional amount for all hours above 40 that I work during a week.  I acknowledge that I understand that my fixed base weekly pay is compensation for all the hours worked in a week.  I acknowledge that Bloomberg will pay me this fixed base salary for each week that I work, whether I work more than or fewer than 40 hours that week, subject to the Company's sick day and leave policies.  I further understand that my actual hours worked will fluctuate depending on the needs of the department and Bloomberg's clients.  Bloomberg will pay an additional 50% overtime premium for hours worked in excess of 40 hours in a week[.]

Notice.  Diaz signed the Notice on March 1, 2019.  *See id.*

Diaz claims that, during the relevant period of her employment, she "was paid as a salaried employee with a set and fixed schedule" of 8 a.m. to 5 p.m., Monday to Friday.  FAC ¶ 17.  But she also alleges that she "routinely worked hours for which she was not paid" at all, "including before the start of her scheduled shifts, during meal breaks, after the end of her shifts, on weekends or on days off, and remotely from home."  *Id.* ¶ 18.  For example, during a two-week period in April 2022, Diaz alleges that she worked approximately 30 minutes to 1 hour after her scheduled shift on at last four occasions and worked during her meal break approximately six times.  *Id.* ¶ 27.  Diaz claims that during a different time period, she worked an additional eight-hour shift outside of her typical schedule.  *Id.* ¶¶ 24, 27, 53.  Diaz acknowledges that, on the "few occasions" when she "did receive overtime for hours worked beyond her

scheduled shift," she was "paid one-half of her regular rate" in accordance with the Notice. *Id.* ¶ 24; *see also id.* ¶ 27. For example, during a two-week period in May 2022, Diaz was paid for eight hours of overtime at a rate of $18.23, "which was one-half of her regular rate." *Id.* ¶ 24.

On August 25, 2022, Diaz filed this action on behalf of herself and others similarly situated, alleging claims arising under the FLSA and the NYLL. In the operative First Amended Complaint, Diaz alleges four causes of action: (1) unpaid overtime under the FLSA; (2) unpaid overtime under the NYLL; (3) violations of the wage notice requirements of the NYLL; and (4) violations of the wage statement provisions of the NYLL. As noted, Bloomberg moves for partial dismissal of the first two claims — specifically, to the extent that they allege that Diaz was paid overtime using an incorrect rate pursuant to the FWW method. Significantly, Bloomberg does not seek dismissal of Diaz's first two claims to the extent that they allege that Bloomberg failed to pay her overtime for certain hours altogether. *See* Def.'s Mem. 1, 6.

## LEGAL STANDARD

A Rule 12(c) motion for judgment on the pleadings is subject to the same legal standards as a Rule 12(b)(6) motion to dismiss. *See Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). A court must assume the truth of all facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. *See id*. To survive a motion for judgment on the pleadings, a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A

complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If a plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 570; *see also, e.g.*, *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988) ("Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings.").

## DISCUSSION

As noted, Bloomberg moves to dismiss Diaz's first two causes of action to the extent that they allege that Bloomberg improperly used the FWW method and, on that basis, paid her overtime at only 50% of her regular hourly rate. In general, the FLSA and NYLL require employers to pay nonexempt employees a "rate not less than one and one-half times the regular rate at which he is employed" for every hour worked in excess of forty in a given week. 29 U.S.C. § 207(a)(1); *accord* 12 N.Y.C.R.R. § 142-2.2. If nonexempt employees are paid a fixed weekly salary for hours that fluctuate from week to week, however, "employers are permitted to use the FWW method" and are required to pay "only half-time (*i.e.,* 50% of the regular rate), rather than time-and-a-half (150%)." *Wills v. RadioShack Corp.*, 981 F. Supp. 2d 245, 254 (S.D.N.Y. 2013) (internal quotation marks omitted). The theory is that, in such cases, the lower rate "satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement. In other words, because the fixed salary compensates the employee for all the hours worked that week — whether more or less than 40 — paying an additional 50% of the 'regular rate' for every hour above 40 complies with the FLSA's requirement that employers pay time-and-a-half for overtime hours." *Id.* at 255 (internal citations and quotation marks omitted).

An employer may use the FWW method — for purposes of both the FLSA and the NYLL — only if the following five requirements are met:

(1) the employee's hours fluctuate from week to week;

(2) the employee receives a fixed weekly salary which remains the same regardless of the number of hours the employee works during the week (excluding overtime premiums);

(3) the fixed amount is sufficient to provide compensation at a regular rate not less than the legal minimum wage;

(4) the employer and employee have a clear mutual understanding that the employer will pay the employee a fixed salary regardless of the number of hours worked; and

(5) the employee receives a fifty percent (50%) overtime premium in addition to the fixed weekly salary for all hours worked in excess of 40 during the week.

*Id.* at 255 (citing 29 C.F.R. § 778.114(a)).  Here, there is and could be no dispute that Bloomberg satisfied requirements (2), (3), and (4), as Bloomberg paid Diaz a fixed weekly salary during the relevant time; that salary far exceeded the legal minimum wage under both federal and state law; and — as reflected in the Notice — Bloomberg and Diaz had a "a clear mutual understanding" that she would be paid "a fixed salary regardless of the number of hours worked." *Id.*  Thus, whether Bloomberg was entitled to use the FWW method to calculate Diaz's overtime rate turns on whether it also satisfied requirements (1) and (5).  *See* ECF No. 34 ("Pl.'s Opp'n"), at 8-15; *see also* ECF No. 35 ("Def.'s Reply"), at 1-2.

Based on Diaz's own allegations, the Court concludes that Bloomberg did.[1]  For starters, the First Amended Complaint explicitly alleges that Diaz's hours of work fluctuated from week

---

[1] As the parties note, there is a Circuit split with respect to whether the employer or employee bears the burden of showing that the FWW is applicable (or inapplicable).  *See* Pl.'s Opp'n 7-8; Def.'s Reply 2 n.1; *compare, e.g.*, *Davis v. Friendly Exp., Inc.*, No. 02–14111, 2003 WL 21488682, at *3 (11th Cir. Feb. 6, 2003) (per curiam) (employee's burden), *with Monahan v. Cnty. of Chesterfield*, 95 F.3d 1263, 1275 n.12 (4th Cir. 1996) (employer's burden).  The Court need not and does not choose a side on the issue here, as Diaz's own allegations establish

5

to week. *See, e.g.*, FAC ¶ 20 (alleging that Diaz began working "between 15 to 30 minutes" before the start of her scheduled shift "multiple times throughout her employment"); *id.* (alleging that Diaz worked beyond the end of her shift "*nearly* every day" (emphasis added)); *id.* (alleging that Diaz "*often* worked until 6 p.m." (emphasis added)); *id.* ¶ 26 (alleging that Diaz worked through lunch "at least 2 to 3 times per week"); *id.* ¶ 27 (alleging that, during a two-week period in April 2022, Diaz worked approximately thirty minutes to one hour after her shift on at least four occasions and worked through her meal break approximately six times); *id.* (alleging that Diaz worked an additional eight-hour shift outside her typical schedule during a different pay period). In arguing otherwise, Diaz contends that her hours did not "materially" vary. Pl.'s Opp'n 2, 12-13. But the premise of that argument is questionable. And, in any event, the rule does not have a materiality requirement. "The regulations require simply that weekly hours fluctuate . . . ." *Thomas v. Bed Bath & Beyond, Inc.*, 309 F. Supp. 3d 121, 138 (S.D.N.Y. 2018), *aff'd*, 961 F.3d 598 (2d Cir. 2020); *accord Stein v. Guardsmark, LLC*, No. 12-CV-4739 (JPO), 2013 WL 3809463, at *4 (S.D.N.Y. July 23, 2013). And "[t]here is no dispute that [Diaz's] hours varied." *Thomas*, 309 F. Supp. 3d at 138. Thus, the first requirement is plainly satisfied.

Second, requirement (5) is satisfied because it is undisputed that Bloomberg paid Diaz for her reported overtime hours at the 50% rate. *See* FAC ¶¶ 24, 27, 35, 51, 53. In arguing otherwise, Diaz contends that the requirement is not met where an employer fails to pay its employee for some overtime hours altogether — as Diaz alleges Bloomberg did here, *see, e.g.*, *id.* ¶¶ 18, 20-24, 31-49, allegations Bloomberg does not (and cannot) contest for purposes of this

---

that the requirements for use of the FWW method are met. *Cf., e.g.*, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("[A] defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint.").

motion, *see* Def.'s Reply 4.  Admittedly, that argument finds superficial support in the language of the regulation, which refers to "*all* overtime hours worked."  29 C.F.R. § 778.114(a)(5) (emphasis added).  But it misunderstands the gravamen of the FWW method, which is not concerned with purported failures to pay overtime, but with whether an employer is allowed to pay its employee overtime pursuant to the FWW method "as a *prospective* payroll practice."  85 Fed. Reg. 34,970, at 34,986 (June 8, 2020) (citing *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1311 (11th Cir. 2013), and *Urnikis-Negro v. Am. Fam. Prop. Servs.*, 616 F.3d 665, 678 (7th Cir. 2010)).  Whether an employer is liable for failure to pay overtime for certain hours worked — that is, for backpay — is a distinct question from whether the employer can use the FWW method for such hours.  To hold otherwise would lead to an absurd result: An employer that failed to pay even a single hour of overtime (whether intentionally or inadvertently) would retroactively be liable for the difference between the 50% rate and the 150% rate for all hours worked (at least within the statute of limitations).

    The cases on which Diaz relies — *Klein v. Torrey Point Grp., LLC*, 979 F. Supp. 2d 417 (S.D.N.Y. 2013), and *Russell v. Wells Fargo & Co.*, 672 F. Supp. 2d 1008 (N.D. Cal. 2009), *see* Pl.'s Opp'n 10 — do not suggest, let alone hold, otherwise.  Instead, both cases "involved misclassification, which occurs when employees are erroneously treated as exempt by their employers.  In that context, courts have generally concluded that FWW is not the appropriate measure of damages because it would have been impossible for the parties to have formed a clear and mutual understanding that the FWW method applied and overtime would not have been paid in the requisite contemporaneous manner."  *Stein*, 2013 WL 3809463, at *3 n.4; *see Klein*, 979 F. Supp. 2d at 437 (noting the "the critical difference between employees contesting the adequacy of past overtime payments actually distributed pursuant to the FWW method[] and employees

7

contesting their past classification as exempt from overtime payments at all"); *accord Russell*, 672 F. Supp. 2d at 1013-16.  Put simply, "[t]hose considerations do not bear on the analysis in this case."  *Stein*, 2013 WL 3809463, at *3 n.4.

In sum, Diaz's own allegations demonstrate conclusively that Bloomberg was entitled to pay her overtime at the 50% rate in accordance with the FWW method.  Whether Bloomberg is liable for the overtime hours that Diaz alleges she worked and did not get paid at all is a question for another day.

## CONCLUSION

For the reasons stated above, Bloomberg's motion for partial judgment on the pleadings is GRANTED and Diaz's first and second causes of action are dismissed to the extent that they allege that Bloomberg improperly used the FWW method of paying overtime and, thus, paid overtime at an incorrect rate.  Further, the Court declines to grant Diaz leave *sua sponte* to amend these claims.  Diaz was previously granted leave to amend to cure the deficiencies raised in Bloomberg's initial motion for judgment on the pleadings and was explicitly cautioned that she "w[ould] not be given any further opportunity to amend the complaint to address issues raised by the motion."  ECF No. 25.  Additionally, the problems with Diaz's claim are substantive and cannot be cured through amendment.  *See, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that a district court may deny leave to amend when amendment would be futile because the problems with the plaintiff's claims are "substantive" and "better pleading will not cure" them).  Finally, the initial pretrial conference, which will be held by telephone, is REINSTATED for **June 6, 2023**, at **9:00 a.m.**  *See* ECF No. 7.  The parties are reminded, in accordance with the Notice of Initial Pretrial Conference, *see id.*, and Paragraph 2.B of the Court's Individual Rules and Practices, to file on ECF a joint letter and a proposed Civil

Case Management Plan and Scheduling Order attached as an exhibit to the joint letter, no later than Thursday of the week prior to the initial pretrial conference.

The Clerk of Court is directed to terminate ECF No. 28.

SO ORDERED.

Dated: May 17, 2023
   New York, New York

_____
JESSE M. FURMAN
United States District Judge