# MCLAUGHLIN & STERN, LLP
**FOUNDED 1898**

**BRETT R. GALLAWAY**
Partner
bgallaway@mclaughlinstern.com
Direct: (646) 738-6353

260 MADISON AVENUE
NEW YORK, NEW YORK 10016
(212) 448–1100
FAX (212) 448–0066
www.mclaughlinstern.com

CLARK, NEW JERSEY
GARDEN CITY, NEW YORK
MILLBROOK, NEW YORK
NAPLES, FLORIDA
WEST PALM BEACH, FLORIDA
WESTPORT, CONNECTICUT

August 31, 2023

**Via ECF**

Honorable Jessica G.L. Clarke
United States District Judge
United States District Court
Southern District of New York
500 Pearl St., Room 1040
New York, NY 10007

   RE: ***Diaz v. Bloomberg L.P.***
      **Case No.: 1:22-cv-07251 (JGLC)**

Dear Judge Clarke:

  We represent Heidi Diaz, the plaintiff in the above-referenced matter ("Plaintiff"), and submit this letter with the consent of counsel for defendant Bloomberg L.P. ("Defendant" or "Bloomberg") for the Court's assessment and approval of the settlement agreement ("Agreement") reached between the parties to resolve Plaintiff's claims under the Fair Labor Standards Act ("FLSA"), a copy of which is annexed hereto as Exhibit 1. As further set forth below, the parties respectfully request that the Court approve the Agreement because it represents a fair and reasonable resolution of a *bona fide* dispute under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

  Plaintiff was employed by Bloomberg from January 13, 2014 to July 6, 2022. In or around July or August 2017, Plaintiff became a Human Resources Specialist in Bloomberg's HR Department. Plaintiff remained in that role until the termination of her employment. In or around March 2019, Defendant reclassified Plaintiff's role as non-exempt and eligible to receive overtime.

  On August 25, 2022, Plaintiff commenced this action on behalf of herself and all other similarly situated current and former nonexempt salaried employees of Defendant, alleging claims for unpaid overtime, payment of overtime at an improper rate, and minimum wage violations under the FLSA and New York Labor Law ("NYLL"), a claim for unpaid straight wages under the NYLL, and wage statement and wage notice claims under NYLL § 195. *See* Dkt. No. 6. Specifically, Plaintiff asserted that she was not paid overtime for all the hours she worked, including before the start of her scheduled shifts, during meal breaks, after the end of her shifts,

McLaughlin & Stern, LLP

Honorable Jessica G.L. Clarke
August 31, 2023
Page 2

on weekends or days off, and remotely from home. She also asserted that she was improperly paid only one-half of her regular rate for overtime using the fluctuating workweek method. *See id.* On October 3, 2022, Defendant filed its Answer, in which it denied all liability, Dkt. No. 19, and moved for partial judgment on the pleadings, *see* Dkt. Nos. 20, 21. Specifically, Defendant moved for judgment on (i) Plaintiff's minimum wage claims under the FLSA and NYLL, (ii) Plaintiff's claim for unpaid straight wages under the NYLL, and (iii) Plaintiff's claims that Bloomberg paid overtime at an improper half-time rate under the FLSA and NYLL. On October 6, 2022, the Court entered an order granting Plaintiff leave to amend her Complaint by October 24, 2022. *See* Dkt. No. 25.

On October 24, 2022, Plaintiff filed an Amended Complaint. *See* Dkt. No. 26. On November 11, 2022, Defendant answered the Amended Complaint, Dkt. No. 27, and moved again for partial judgment on the pleadings, arguing that Bloomberg appropriately paid Plaintiff overtime at half-time under the FLSA and NYLL under the fluctuating workweek method of calculating overtime, *see* Dkt. Nos. 27, 28. On May 17, 2023, the Court issued a Memorandum Opinion and Order granting Defendant's motion for partial judgment on the pleadings. Dkt. No. 36. Defendant did not move to dismiss, and the Court's Memorandum Opinion and Order did not address, Plaintiff's other claims in her Amended Complaint. *See id.*

The parties then engaged in discovery and exchanged documents. Defendant produced documents describing its overtime and timekeeping policies as well as documents and data pertaining to Plaintiff's employment (e.g., Plaintiff's personnel file, timekeeping records, payroll records).

After weeks of negotiations, the parties reached an agreement in principle to resolve Plaintiff's individual claims. The parties then entered into the Agreement attached hereto, memorializing the terms of the settlement of Plaintiff's FLSA claims.[1] As part of the Agreement, Plaintiff agrees to dismiss her Amended Complaint with prejudice. Accordingly, Plaintiff now submits this motion, with Defendant's consent, requesting that the Court approve the Agreement so that the parties' settlement can be consummated and this case can be dismissed with prejudice.

## II.  THE NEED FOR THE COURT'S APPROVAL OF THE AGREEMENT

Under *Cheeks*, the parties' FLSA settlement must be approved by the Court. *See* 796 F.3d 199. This is because the FLSA places strict limits on an employee's ability to waive claims and, as such, an employee may not waive or otherwise settle an FLSA claim for unpaid wages for less than the full statutory damages unless the settlement is supervised by the Secretary of Labor or made pursuant to a judicially supervised stipulated settlement. *See D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *Elliot v. Allstate Investigations, Inc.*, 2008 WL 728648

---

[1]  As reflected in the Agreement, the parties have entered a separate settlement to resolve Plaintiff's non-FLSA claims, including her asserted NYLL claims. The settlement of these non-FLSA claims provides for an additional payment of $22,500 ($11,250 to Plaintiff and $11,250 to her counsel) and does not require the Court's approval; however, should the Court wish to see the agreement, the parties are happy to submit it for the Court's review.

McLaughlin & Stern, LLP

Honorable Jessica G.L. Clarke
August 31, 2023
Page 3

(S.D.N.Y. 2008). Accordingly, Plaintiff submits this letter seeking the Court's approval of the parties' FLSA settlement.

### III. THE COURT SHOULD APPROVE THE SETTLEMENT OF PLAINTIFF'S FLSA CLAIMS AS FAIR AND REASONABLE AND DISMISS THE ACTION WITH PREJUDICE

An FLSA settlement should receive judicial approval where it is fair and reasonable. *See Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013). "Generally, there is a 'strong presumption in favor of finding a settlement fair,' as 'the Court is generally not in as good a position as the Parties to determine the reasonableness of an FLSA settlement.'" *Id.* (quoting *Crabtree v. Volkert, Inc.*, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013)). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1354).

Here, there is no question that the settlement is fair and reasonable and did not come about because of "overreaching" by the employer. To the contrary, Plaintiff is represented by highly competent counsel, who negotiated an agreement that provides substantial benefits to Plaintiff, including a lump sum payment to Plaintiff of $11,250. This settlement amount is especially reasonable considering Plaintiff's potential damages and the litigation risks faced by Plaintiff as to both liability and damages. Defendant denies that Plaintiff ever worked off-the-clock or that any managers at Bloomberg had any knowledge of her performing such work. Moreover, Plaintiff would likely need to rely on her own testimony to prove the amount of allegedly uncompensated hours she claims to have worked, and her managers will likely dispute the facts underlying such claims. Thus, any recovery in this matter at all would be uncertain. By contrast, the Agreement provides Plaintiff with an immediate and substantial lump sum payment. In light of the risks of findings in favor of Defendant on both liability and damages, the settlement amount of $11,250 represents a fair and reasonable recovery.

Approval of the Agreement would also avoid significant litigation burdens and expenses. If the case were to continue, both parties would need to take additional written discovery and depositions. Defendant would likely file a summary judgment motion at the end of discovery, and if the case were not resolved on summary judgment, the case would be tried. Thus, further litigation would result in both sides incurring significant legal fees that would far exceed the damages at stake and exhaust the resources used to settle this matter. It would also take months, if not years, before Plaintiff would see any possible recovery, whereas the Agreement provides an immediate lump sum payment to Plaintiff's benefit.

The Agreement is a result of extensive arms'-length bargaining between represented parties, which further weighs in favor of finding the settlement reasonable. *See Lliguichuzhca*, 948 F. Supp. 2d at 366 (citing *Hernandez v. Tabak*, 2013 WL 1562803, at *1-2 (S.D.N.Y. Apr. 10,

MCLAUGHLIN & STERN, LLP

Honorable Jessica G.L. Clarke
August 31, 2023
Page 4

2013); *Aponte v. Comprehensive Health Mgmt., Inc.*, 2013 WL 1364147, at *4 (S.D.N.Y. Apr. 2, 2013). Indeed, counsel for the parties engaged in multiple informed rounds of negotiations, making several offers and counteroffers after the exchange of discovery. Moreover, the Agreement does not include any confidentiality provisions, general releases, or any signs of fraud or collusion that would otherwise militate against approval of the Agreement. *See Santos v. Yellowstone Properties, Inc.*, 2016 WL 2757427, at *2-3 (S.D.N.Y. May 10, 2016) (approving settlement and noting that "none of the factors that weigh against settlement approval appear to be present").

For these reasons, the Court should approve the Agreement as fair and reasonable. *See Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (considering possible range of recovery, litigation risks and costs, and whether agreement was the product of arms'-length bargaining in determining whether settlement is fair and reasonable).

### IV. APPLICATION FOR ATTORNEYS' FEES

Pursuant to the Agreement, Plaintiff seeks, and Defendant has agreed to pay, attorneys' fees and costs in the sum of $11,250, which reflect a very small portion of the time actually spent by Plaintiff's counsel on this case. More specifically, Plaintiff's counsel has spent 160.80 hours of attorney time on this matter through the date of this letter motion for a total lodestar of $78,551.50 and have incurred costs totaling $1,377.00.[2] Thus, Plaintiff's counsel is seeking fees less than the actual time spent on this action. Stated differently, Plaintiff's counsel seeks a negative multiplier of their lodestar, which is routinely approved by courts in this Circuit. *See, e.g.*, *Feliciano v. Metropolitan Transportation Authority*, 2020 WL 8991784, at *2 (S.D.N.Y. May 6, 2020) (holding that the attorneys' fees contemplated in the settlement agreement, which represented a negative lodestar multiplier, was fair and reasonable).

The attorneys at McLaughlin & Stern, LLP ("M&S") who worked on this matter include Brett R. Gallaway, a partner in the litigation department and co-chair of McLaughlin and Stern's class action practice with substantial experience in litigating wage-and-hour disputes on behalf of both employees and management, and Jason S. Giaimo, a partner in the litigation department with significant wage-and-hour experience. Mr. Gallaway's hourly rate is $750.00 and Mr. Giaimo's is $550.00. These hourly rates are reasonable given the experience of Plaintiff's counsel and have been approved by courts in this Circuit before. *See, e.g.*, *Civil v. Starrett City, Inc.*, 18-cv-2256(FB)(PK), Dkt. No. 63 (approving M&S's hourly rates as reasonable in the Eastern District of New York); *Morales v. Rochdale Village, Inc.*, 15-cv-00502 (SJB), Dkt. No. 228 (same); *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 221 (S.D.N.Y. 2015) (approving hourly rates of $650-900 per hour for partners and $350-600 per hour for associates).

Most significantly, the attorneys' fees that Plaintiff's counsel seeks are ***in addition*** to the lump sum payable to Plaintiff. In other words, Plaintiff's recovery would be in no way reduced or

---

[2] If requested by the Court, Plaintiff's counsel will provide all appropriate billing records indicating fees and costs.

{N0637839.1}

**McLaughlin & Stern, LLP**

Honorable Jessica G.L. Clarke
August 31, 2023
Page 5

diminished by the Court's approval of Plaintiff's counsel's attorneys' fees. Defendant does not object to this payment or allocation of attorneys' fees and costs.

Accordingly, Plaintiff respectfully requests that the Court approve the Agreement in its entirety, including payment of $11,250 to Plaintiff's counsel for their attorneys' fees and costs.

We thank the Court in advance for its time and consideration.

Respectfully submitted,

Brett R. Gallaway, Esq.

cc:   Counsel for Defendant (via ECF)

{N0637839.1}